[S. F. No. 10574. In Bank.—August 1, 1923.]

ASSOCIATED OIL COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] Workmen's Compensation Act — Injury to Employee — Fall from Porch of Employer's Rooming-house—Evidence.—An employee who was injured by falling from the porch of a rooming-house, at which he was living and which was conducted by his employer, when the leg of a chair which the employee had placed as a seat for himself on the edge of the porch went through a crack in the floor, is not entitled to compensation under the Workmen's Compensation Act, where such injury was sustained at a time when such employee was not at work, and was neither required to work nor to be on the premises, and he had a choice of

---

1. Injuries arising out and in the course of employment generally, notes, Ann. Cas. 1915C, 921; Ann. Cas. 1918B, 362; L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

going to a near-by town, but preferred quarters provided for his convenience by his employer.

[2] ID.—RECOVERY FOR INJURY — ESSENTIALS—CONSTRUCTION OF ACT. The Workmen's Compensation Act does not provide an insurance against every accident happening to the workman while he is engaged in the employment. The words "arising out of and in the course of employment" are conjunctive, and relief can be had under the act only when the accident arose both "out of" and "in the course of" employment. The injury must be received (1) while the workman is doing the duty he is employed to perform, and also (2) as a natural incident of the work; it must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work.

PROCEEDING on Certiorari to annul an award of the Industrial Accident Commission allowing compensation. Award annulled.

The facts are stated in the opinion of the court.

Daniel W. Hone and William F. Kiessig for Petitioner.

A. E. Graupner and Warren H. Pillsbury for Respondents.

WASTE, J.—Petitioner in this proceeding seeks annulment of an award made by the Industrial Accident Commission in favor of the applicant, Charles C. Jones, and against it as employer and carrier of its own insurance. The facts of the case are as follows: The applicant was employed as a machinist by the petitioner, Associated Oil Company, at its Camp C, near the town of Fellows. The company conducted a rooming-house at the plant for its employees. The men were not required to stay there and it was no part of the contract of employment that they should do so. Similar accommodations were available at the town of Fellows, a distance of about a mile and a half from the camp. The applicant worked six days a week, his hours being from 7 o'clock until noon, and from 1 to 4 in the afternoon. On the morning of Sunday, July 9, 1922, he worked a couple of hours overtime. That finished his task for the day. He was not required to return to his work until the next morning. A little after 5 o'clock in the afternoon, after supper-time, with others, he repaired to the rooming-house, but it was so hot that the men went out on the veranda "to keep cool." Jones

placed a seat for himself on the edge of the porch. There were many cracks in the floor and the leg of the chair went through one of them. There being no protecting railing, Jones was precipitated to the ground, a distance of from four to six feet. He sustained injuries to his right hip, on the basis of which, and on a finding that the injury arose out of and in the course of his employment, the Commission made the award.

Petitioner contends that the injury for which compensation was awarded did not arise out of or in the course of the applicant's employment, in that the latter "was engaged in pursuing a purely personal service, for his own convenience, pleasure and benefit," that he was performing no service for his employer, owed no duty to the latter at the time of his injury, and was not required to be upon his employer's premises at that time. The respondent Commission argues that the injuries were due to the unsafe condition of the "bunkhouse" premises provided by the employer, and, under the circumstances, are compensable. The question presented for decision, according to respondents, is "whether injuries occurring about the employer's bunkhouse situated on the employer's working premises, sustained by employees during their leisure hours while reasonably using the bunkhouse in a proper manner during intermissions from work, the injury being due to unsafe conditions of the premises provided by the employer, are within the protection of the Workmen's Compensation Act."

The general rule appears to be that when the contract of employment contemplates that the employees shall sleep upon the premises of the employer, the employee, under such circumstances, is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer. (1 Schneider's Workmen's Compensation Law, p. 608, par. 279.) The test is whether or not the workman is given a choice in the matter and is free as possible to come or go as he pleases. (*Philbin* v. *Hayes*, 119 L. T. R. (Eng.), p. 133; note to 17 N. & C. C. A. 948.) In some jurisdictions compensation has been awarded under situations somewhat similar to that here. A sort of legal fiction has been invoked to the effect that a servant, though "waiting," is still "serving." Those cases, however, have distinguishing features which serve to clearly differentiate

them from the case here. In some instances, also, the statutes are different from ours.

[1] It does not appear whether or not respondent Jones was living at the rooming-house at the time he was injured. We think it may be correctly assumed that he was. The time was July. He testified there was "no other place to stay at only the Associated Oil Company's place. It ain't a matter of choice. Unless you want to walk a matter of a mile and a half in the hot sun at 115 or 120, you got to stay there." It does appear that he was at the rooming-house and fell from the porch on a Sunday afternoon, at a time when not at work, and was neither required to work nor to be on the premises. He had a choice of going to the town of Fellows, but preferred quarters provided for his convenience by the employer, for the reason that he thus avoided walking one or one and a half miles in the hot sun. These facts do not present a case in which "the employer places the employee in such circumstances that his time is never his own, where he has no discretion as to where he shall sleep and where he shall eat, that the workman must be considered in the employ of the employer all of the time or at least performing a service which is incidental to the employment he is engaged in," as was the case in *Holt Lumber Co.* v. *Industrial Com.*, 168 Wis. 381 [170 N. W. 366], so strongly relied on by respondent. The facts in that case show that the employees in the particular camp at which the injury occurred could not select their own sleeping quarters, but were compelled to sleep where the employer instructed them to sleep. It was part of the contract of employment that the employee should sleep on the premises in the bunk furnished by the lumber company.

Other cases relied on by respondent are as easily distinguished. The facts in *In re Bollman*, 73 Ind. App. 46 [126 N. E. 639], were that the employee was not employed for a definite number of hours of each day with no obligation to his employer for the remaining of the twenty-four. By the terms of his agreement he was required to leave his own domicile and travel from farm to farm with a threshing outfit, to stay nights on the premises where the machine happened to be, and as watchman to guard and protect it from fire and trespassers. In *Southern Surety Co.* v. *Stubbs* (Tex. Civ. App.), 199 S. W. 343, the deceased was

living upon a dredger and at all times under and subject to the orders of its captain. The storm which caused the loss of the dredger and the death of the employee "not only created an emergency which required the efforts of all employees to keep it afloat but produced a situation which permitted of nothing else." In *Taylor* v. *Saunders,* 71 Colo. 160 [204 Pac. 608], the court held that the deceased, in remaining at the car-barn after a late run, in order to take out a car at an early hour, did not assume "a position of peril merely for his own pleasure or convenience." The time for making the next run was so near at hand, the employee was acting within the scope of his employment by waiting at the car-barn.

The foregoing cases serve to emphasize the conditions which must exist to entitle the employee to compensation under circumstances similar to the facts of the proceeding now under review. There is wanting in this case an essential element needed to confer jurisdiction on the Industrial Accident Commission. The injury did not arise out of the employment. (*Griffith* v. *Cole Bros.*, 183 Iowa, 415, 429 [L. R. A. 1918F, 923, 165 N. W. 577].) In that case the deceased, under regular and continuous employment by a bridge contractor, was, at the close of the day's work, on the bridge and preparatory to retiring for the night, sitting in a tent specially furnished by the employer for the housing of his men, and situated near the bridge under construction. The tent was on the ground, saturated with water, and had no floor and was without lightning-arresters. It was higher than surrounding objects, was adjacent to a wire fence and a pile of steel rods, and had a wire clothesline stretched inside and below the ridge-pole. The tent was struck by lightning and the employee was killed. The court held that the deceased was in the course of his employment at the time of the injury, but reversed an award of the Industrial Commission upon the ground that the injury did not arise out of the employment. Subdivision 7 of section 3 of the Workmen's Compensation Law of New York (Consol. Laws, c. 67) limits compensation to "accidental injuries arising out of and in the course of employment." Construing this language the court of that state said: "The statute does not provide an insurance against every accident happening to the workman while he is en-

gaged in the employment. The words 'arising out of and in the course of employment' are conjunctive, and relief can be had under the act only when the accident arose both 'out of' and 'in the course of' employment. The injury must be received (1) while the workman is doing the duty he is employed to perform, and also (2) as a natural incident of the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work.'' (*Daly* v. *Bates & Roberts,* 224 N. Y. 126, 127 [120 N. E. 118].) [2] The law in this state is the same. (*Coronado Beach Co.* v. *Pillsbury,* 172 Cal. 682, 684, 685 [L. R. A. 1916F, 1164, 158 Pac. 212]; *Ocean Acc. & Guarantee Co.* v. *Industrial Acc. Com.,* 173 Cal. 313, 317 [L. R. A. 1917B, 336, 159 Pac. 1041]; *Casualty Co. of America* v. *Industrial Acc. Com.,* 176 Cal. 530, 533 [169 Pac. 76]; *California Casualty Indemnity Exchange* v. *Industrial Acc. Com.,* 190 Cal. 433 [213 Pac. 257].) Of persuasive force, also, are two decisions of the respondent Industrial Accident Commission, the facts in which are analogous to those in the present proceeding, and in both of which compensation was denied. (*Webster* v. *C. B. Steddom,* 3 Dec. of I. A. C. of Cal. 265; *Mahoney* v. *Sterling Borax Co.,* 2 Dec. of I. A. C. of Cal. 700.)

The award is annulled.

Wilbur, C. J., Myers, J., Lennon, J., and Kerrigan, J., concurred.