Nancy G. D'ALESSIO

v.

**STATE of Rhode Island, Rhode Island Veteran's Home.**

83–401–Appeal.

Supreme Court of Rhode Island.

May 16, 1986.

Raul L. Lovett, Lovett Schefrin & Gallogly, Ltd., Providence, for petitioner.

Arlene Violet, Atty. Gen., Madis T. Suvari, Sp. Asst. Atty. Gen., for respondent.

OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the employer from a decree of the Workers' Compensation Commission (commission) granting the employee's original petition.[1]

The essential facts are not in dispute. The employee worked as an institutional attendant whose duties included feeding, bathing, and dressing patients and providing them with basic care. The employee's usual work hours were 8 a.m. to 4 p.m. ,five days per week. On the evening of May 14, 1981 at 7 p.m. employee attended a union meeting, the purpose of which was for employees to discuss grievances to be submitted to their employer. These meetings were the vehicles through which mere gripes could be weeded out from legitimate contractual grievances before negotiation with employer.

The employer provided the union with a room in the Veterans' Home building specifically for the purpose of conducting these meetings. The employer also gave the union permission to use the telephone in a boilerroom across the hall from their union office.

At the May 14 meeting, union representatives were discussing a particular grievance that had been written up by a steward absent from this session due to duties in another ward of the building. As union secretary, employee was asked to telephone the steward and request that he stop by the union office to explain those portions of his grievance that the committee failed to comprehend. As she left the union office and proceeded to the nearest telephone across the hall in the boilerroom, she fell down four stairs twisting her leg under her body and striking cement as she landed on her left side. Stunned, she limped to the telephone where she placed the call, then made her way back to the office where she mentioned her fall to the other committee members. The employee

1. The commission found the employee totally disabled from May 17, 1981, through June 17, 1981, and from July 8, 1981, through July 15, 1981.

filled out an accident report at work and submitted it to the director of nurses. By May 16, she was experiencing increased pain in her neck, back, arms, and legs to the point where she sought medical help. Due to her pain and medical examination, she stayed out of work from May 17 through June 17, 1981. Her condition was reaggravated as a result of her return to work, and she once again left her job on July 8, 1981, not to return until July 15, 1981.

The issue before us for review is whether an injury sustained while employee was attending a union meeting arose out of and in the course of employment, connected therewith and referable thereto. We have repeatedly held that the question of whether an injury can be said to have arisen out of and in the course of the employment depends upon the particular facts and circumstances of each case. *Lima v. William H. Haskell Manufacturing Co.*, 100 R.I. 312, 215 A.2d 229 (1965).

Moreover, findings of fact by the commission are, in the absence of fraud, conclusive, if supported by competent evidence. This court will only consider issues of law or issues that contain a mixture of facts and law. *Spikes v. State*, 458 A.2d 672 (R.I. 1983).

In the instant case the facts are not in dispute. The sole question to be determined is whether the injury incurred at the union meeting is compensable.

As the commission's account points out, employee was attending a union grievance-committee hearing held on employer's premises, with permission of employer, and in a room employer provided expressly for this purpose. In *Beauchesne v. David London & Co.*, 118 R.I. 651, 655, 375 A.2d 920, 922 (1977), this court stated that

"an employee's injury is compensable if the peculiar facts and circumstances of a particular case establish a causal connection or nexus between the injury and the employment. * * * [T]he term 'causal connection' when employed in workmen's compensation cases does not carry the same connotation as does the term 'proximate cause' when it is used as a term of reference in negligence actions. A causal connection or nexus can be established for the purposes of workmen's compensation if the conditions and nature of the employment contribute to the injury. To find a nexus, we first attempt to determine if the injury occurred during the period of employment at a place where the employee might reasonably have been and while he was reasonably fufilling the duties of his employment or doing something incidental thereto or to the conditions under which those duties were to be performed. * * * Compensation is not to be denied merely because the employee's injury occurred off the premises or at a time other than his regular working hours, but the facts and circumstances of each case will be examined with an eye to ascertaining if the record establishes a nexus or a link between the injury and the employment."

The majority of jurisdictions have denied recovery for injuries suffered at a union meeting when the meeting served the exclusive personal interests of the employee. *See, e.g., Pacific Indemnity Co. v. Industrial Accident Commission*, 27 Cal. App. 2d 499, 81 P.2d 572 (1938); *Tegels v. Kaiser-Frazer Corp.*, 329 Mich. 84, 44 N.W. 2d 880 (1950). In such cases, the union activity was found devoid of any mutual employer-employee benefit to bring it within the ambit of employment. *See generally* 1A Larson, *The Law of Workmen's Compensation*, § 27.33 (1985). It is increasingly being held, however, that an activity undertaken by an employee in his or her capacity as a union officer may simultaneously serve the interests of the employer. *Id.* ; *See also New England Telephone Co. v. Ames*, 124 N.H. 661, 474 A.2d 571 (1984); *Salierno v. Micro Stamping Co.*, 136 N.J. Super. 172, 345 A.2d 342 (1975). As the *Ames* court points out, the court must examine the circumstances of each case in determining whether a union activity is of mutual benefit to an employer and an em-

ployee. *Ames*, 124 N.H. at 664, 474 A.2d at 574.

In this case, the union meetings served to facilitate ongoing negotiations with the employer management by separating out gripes from legitimate grievances. This process saved time and contributed to the efficient operation of the employer. In fact, the employer supported this committee effort by furnishing a room for the meetings as well as telephone access. We hold that the union activity in the instant case was of mutual benefit to both the employer and the employee. We acknowledge that in some cases the benefit of a union activity to an employer may be so tenuous that recovery should be denied. *Ames*, 124 N.H. at 664, 474 A.2d at 574. However, examination of the facts convinces us that recovery in the instant case is merited.

Accordingly, the employer's appeal is denied and dismissed, and the decree appealed from is affirmed.